# EXHIBIT A

IN THE CIRCUIT COURT, FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO:
DIV:

SHANNON N. BARNEY, )
)
     Plaintiff, )
)
v. )
)
GOLDORO DEVELOPMENTS, INC. d/b/a )
BLUEWATER RADIOLOGY, a )
Florida Corporation, and CIRO ADAMO, )
)
     Defendants. )
_____

## **COMPLAINT**

Plaintiff, SHANNON N. BARNEY, ("Barney"), by and through the undersigned counsel and in accordance with the Florida Rules of Civil Procedure, hereby files this Complaint against Defendants, GOLDORO DEVELOPMENTS, INC. d/b/a BLUEWATER RADIOLOGY ("Bluewater") and CIRO ADAMO ("Adamo") (collectively referred to as "Defendants") and in support thereof states as follows:

## **PARTIES, JURISDICTION AND VENUE**

1.     Barney is the former Director of Operations for Bluewater and is a resident of Palm Beach County, Florida.

2.     Bluewater is a Florida for-profit corporation which maintains a principal address located at 5601 Corporate Way, Suite 307, West Palm Beach, Florida 33407.

3.      Bluewater is a magnetic resonance imaging (MRI) facility with two locations in West Palm Beach and Boca Raton, Florida.  Bluewater's National Provider Identifier (NPI) is 1780249094, and its primary taxonomy code is 2085R0202X.

4.      Dr. Ciro Adamo, M.D. ("Adamo"), a medical doctor licensed pursuant to the laws of the state of Florida (License No.: ME156563; NPI: 1093452609), is the owner of Bluewater and a resident of Palm Beach County, Florida.

5.      Venue is proper in Palm Beach County, Florida as the causes of action accrued in Palm Beach County, Florida.

## GENERAL ALLEGATIONS

6.      On or about January 11, 2021, Barney entered into an Employment and Ancillary Agreements contract with Medvue Diagnostic Imaging Inc. ("Medvue") to perform as the Director of Operations with an anticipated start date of February 15, 2021 ("Agreement").  A copy of the Agreement is attached hereto as **Exhibit "A."**

7.      Medvue was formed as a Florida corporation on February 13, 2020, with its principal address located at 5601 Corporate Way, Suite 307, West Palm Beach, Florida 33407.

8.      Medvue never began operations and filed for voluntary dissolution on December 23, 2020.

9.      Nonetheless, on January 11, 2021, Adamo offered Barney the Director of Operations position at Medvue with full knowledge Medvue was a dissolved corporation. Thereafter, Barney accepted the position and executed the Agreement on January 11, 2021. Accordingly, effective January 11, 2021, Barney served as the Director of Operations for Medvue.

10.     Subsequent to the execution of the Agreement, Adamo represented to Barney that Medvue was not in operations and that Barney would be acting as the Director of Operations for Bluewater.

11.     Adamo represented to Barney that the terms within the Agreement would remain the same and effective as to her position with Bluewater to which Barney relied on and accepted ("Oral Agreement").  Other than the terms within the Agreement, there is no written agreement between Bluewater and Barney.

12.     By and through the terms of the Agreement and Oral Agreement, Barney was to report to Adamo.

13.     Pursuant to the Agreement and Oral Agreement, Barney was to be paid a base salary of $140,000.00 "on a bi-weekly basis in accordance with the Company's regular payroll practices." *See* Exhibit A, page 2.

14.     The Agreement and Oral Agreement further provided that, during Barney's third full year of employment, Barney would be entitled to five weeks of paid vacation at her contracted rate.  *See* Exhibit A, pages 2–3.[1]

15.     Notably, Bluewater has previously paid out unused vacation to former employees who either resigned or were terminated.

16.     Additionally, pursuant to the Agreement and Oral Agreement, Bluewater was to establish and provide group health insurance coverage for its employees including, without limitation, Barney within sixty days of her employment start date (i.e., on or before April 16, 2021, given that Barney's start date was February 15, 2021).

---

[1] Given that Barney's start date under the Agreement was February 15, 2021, Barney's "third full year of employment" commenced on February 15, 2023.

17.     Specifically, the Agreement provides: "Once established, you will be eligible for group insurance coverage under the mandatory, Company-sponsored benefit program following sixty (60) days of full-time continuous employment. The program includes Basic Term Life Insurance, Accidental Death and Dismemberment ("AD&D"), Health and Dental coverage. The Company will pay 75% of the cost for employee medical benefits, 60% for employee dental benefits and 100% for Life Insurance and Accidental Dismemberment coverage." *See* Exhibit A, page 3.

18.     Ultimately, Bluewater failed to establish and offer the promised group insurance policy for its employees including, without limitation, Barney.  As such, Barney was never offered or provided Basic Term Life Insurance, Accidental Death and Dismemberment coverage, Dental or Health coverage as provided for in the Agreement and Oral Agreement.

19.     As a result of Bluewater's failure to establish and provide insurance coverage, Barney paid the cost, in full, for health insurance coverage and was not reimbursed by Bluewater.

20.     On March 3, 2023, Barney exchanged written correspondence with Bluewater's legal advisor, Jack Lechcier-Kimel ("Kimel"), in which Kimel represented on behalf of Bluewater and Adamo that Barney was entitled to, and would be paid, for her final two weeks of services rendered as well as five weeks of accrued, unused vacation time at her contracted rate as provided in the Agreement and Oral Agreement.  A copy of this correspondence is attached hereto as **Exhibit "B."**

21.     Later that day, Adamo and Bluewater terminated Barney without cause and without notice.  A true and correct copy of the Notice of Termination ("Notice") is attached hereto as **Exhibit C.**

22.     In accordance with all terms and conditions of the Agreement and Oral Agreement, Barney rendered services to Bluewater from February 15, 2021, through March 3, 2023.

23.     Consistent with the Agreement, Oral Agreement, Florida law, and Bluewater's standard payroll practices, Barney was to be paid her final paycheck on March 8, 2023.

24.     Barney's final paycheck should have included two weeks of services rendered to Bluewater as well as five weeks of accrued, unused vacation time at her contracted rate as provided in the Agreement and Oral Agreement.

25.     Bluewater failed to render any payment to Barney on March 8, 2023, as required under the Agreement, Oral Agreement, and Florida law.

26.     On March 9, 2023, Barney sent written correspondence to Adamo as well as Kimel inquiring as to the status of her final paycheck. A copy of this correspondence is attached hereto as **Exhibit "D."**

27.     Barney's March 9, 2023, written correspondence was disregarded by Adamo, Kimel, and Bluewater.

28.     Accordingly, Barney retained counsel who, on March 27, 2023, sent written correspondence to Bluewater, Adamo, and Kimel demanding prompt payment to Barney in accordance with the Agreement and Florida law.  A copy of this correspondence is attached hereto as **Exhibit "E."**

29.     Thereafter, counsel and Kimel engaged in potential resolution communications, which after approximately five weeks, Kimel advised counsel that Bluewater is allegedly without funds to pay Barney her final paycheck.

30.     To date, Barney has not received any payment for services rendered to Bluewater during her final two weeks of employment nor for her permissible five weeks of unused paid vacation.

31.     Barney is aware of at least two other individuals whom Bluewater has refused, or otherwise failed, to pay final wages.

32.     Barney has engaged the undersigned counsel and is obligated to pay reasonable attorneys' fees for the services thereof.

33.     All conditions precedent to the bringing of this action have occurred or have been waived.

<u>**COUNT I**</u>
*(Violation of Fair Labor Standards Act of 1938 |29 U.S.C. § 201 et seq.)*

34.     Barney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

35.     Pursuant to federal law — specifically, the Fair Labor Standards Act of 1938 ("FLSA") — Barney was classified as an exempt employee of Bluewater during the term of her employment.

36.     Specifically, under the FLSA, Barney was classified under the executive employee exemption of the FLSA given that: (A) she was compensated on a salary basis at a rate in excess of $684.00 per week; (B) her primary duties included managing Bluewater; (C) she customarily and regularly directed the work of at least two or more other full-time employees or their equivalent; and (D) she had the authority to hire or fire other employees. *See* Exhibit A, page 1.

37.     In the alternative, Barney is also classified under the administrative employee exemption of the FLSA given that: (A) she was compensated on a salary basis at a rate in excess of $684.00 per week; (B) her primary duties included performance of office or non-manual work

directly related to the management or general business operations of Bluewater; and (C) her primary duties included the exercise of discretion and independent judgment with respect to matters of significance.

38.     Under the FLSA, Bluewater has a duty to treat its exempt employees such as Barney as salaried, exempt workers consistent with their exempt status and federal law.  This includes, without limitation, the duty of Bluewater to pay Barney full predetermined salary amount "free and clear" for any week in which the employee performs any work without regard to the number of days or hours worked.

39.     Failure by an employer (*i.e.*, Bluewater) to continuously treat salaried, exempt employees consistent with their exempt status causes loss of exemption.

40.     Bluewater failed to remit any payment to Barney consistent with the Agreement and Oral Agreement and, moreover, in violation of its obligations under the FLSA.

41.     Bluewater knowingly and intentionally refused, or otherwise failed, to remit payment to Barney consistent with her salary under the Agreement and Oral Agreement and, further, her status under the FLSA.

42.     Bluewater has continued to refuse, or otherwise fail, to remit payment to date despite numerous demands for the same.

43.     Bluewater has acted in willful violation of the FLSA in voluntarily choosing not to remit payment to Barney, despite conceding that payment is due.

44.     As a result, Bluewater is not only required to remit backpay to Barney but, moreover, is subject to an equal amount as liquidated damages, plus attorneys' fees and court costs.

45.     Moreover, Bluewater is subject to civil monetary penalties under federal law.

46.     As a result of Bluewater's willful misconduct, Barney has suffered and will continue to suffer harm in an amount to be determined at a trial in this matter in excess of $50,000.

WHEREFORE, Plaintiff Shannon N. Barney requests this Court enter judgment against Defendant Goldoro Developments, Inc. d/b/a Bluewater Radiology and award her as follows:

a) Salary, employment benefits, and other compensation lost as a result of Goldoro's breach of contract and violations of the FLSA and Florida law;

b) Statutory liquidated damages under the FLSA and/or Florida law;

c) All reasonable attorneys' fees, litigation expenses, and court costs in connection with this action under the FLSA and/or Florida law;

d) Pre- and post-judgment interest; and

e) Such other relief, including legal and equitable relief, which this Court deems just and proper.

## COUNT II
*(Violation of Florida Wage Law(s) | Fla. Stat. § 448.109)*

47.     Barney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

48.     Pursuant to the Agreement and Oral Agreement, Barney's employment is governed, in part, by the laws of the state of Florida. *See* Exhibit A, page 8.

49.     This includes, without limitation, Fla. Stat. § 448.109 — governing Florida minimum wage.

50.     Pursuant to Fla. Stat. § 448.109: "An employee who has not received the lawful minimum wage after notifying his or her employer and giving the employer 15 days to resolve any claims for unpaid wages may bring a civil action in a court of law against an employer to recover back wages plus damages and attorney's fees."

51.     On March 8, 2023, Barney notified Bluewater in writing that she had not received her final paycheck consistent with the Agreement, Oral Agreement, Florida law, and Bluewater's standard payroll practices. *See* Exhibit C.

52.     Barney's March 8, 2023, written correspondence went disregarded by Bluewater.

53.     On March 27, 2023, Bluewater was advised for a second time that Barney had not received her final paycheck consistent with the Agreement, Oral Agreement, Florida law, and Bluewater's standard payroll practices. *See* Exhibit D.

54.     Accordingly, Bluewater was provided the requisite notice under Fla. Stat. § 448.109.

55.     On May 1, 2023 — well over the fifteen-day threshold under Fla. Stat. § 448.109 — Bluewater, by and through Kimel, advised that Bluewater could not afford to pay Barney her final paycheck.

56.     To date, Barney has received no compensation for her final two weeks of services rendered to Bluewater nor her five weeks of accrued, unused vacation.

57.     Bluewater's misconduct to this effect is in violation of Fla. Stat. § 448.109.

58.     As a result, Bluewater is not only required to remit backpay to Barney but, moreover, is subject to an equal amount as liquidated damages, plus attorneys' fees and court costs.

59.     Moreover, Bluewater is subject to civil monetary penalties under Florida law.

60.     As a result of Bluewater's willful misconduct, Barney has suffered and will continue to suffer harm in an amount to be determined at a trial in this matter in excess of $50,000.

WHEREFORE, Plaintiff Shannon N. Barney requests this Court enter judgment against Defendant Goldoro Developments, Inc. d/b/a Bluewater Radiology and award her as follows:

a) Salary, employment benefits, and other compensation lost as a result of Goldoro's breach of contract and violations of the FLSA and Florida law;

b) Statutory liquidated damages under the FLSA and/or Florida law;

c) All reasonable attorneys' fees, litigation expenses, and court costs in connection with this action under the FLSA and/or Florida law;

d) Pre- and post-judgment interest; and

e) Such other relief, including legal and equitable relief, which this Court deems just and proper.

<u>**COUNT III**</u>
*(Breach of Contract)*

61.     Barney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

62.     Bluewater and Barney entered into a lawful, binding Agreement governing Barney's employment including, without limitation, the compensation thereof.

63.     By and through the Agreement, Barney was entitled to an annual, base salary of $140,000.00 paid on a bi-weekly basis in accordance with Bluewater's standard payroll practices.

64.     In addition, Barney was entitled to all unused, paid vacation as well as certain benefits as promised by the Agreement.

65.     Barney fulfilled all terms and conditions of the Agreement through her date of termination, March 3, 2023.

66.     Barney is entitled to payment for all services rendered through the date of her termination as well as the agreed upon considerations in exchange for acceptance of employment.

67.     Bluewater has admitted that Barney is entitled to payment for services rendered, as well as unused, paid vacation time. *See* Exhibit B.

68. To date, Bluewater has failed to remit payment to Barney for her final two weeks of services rendered, unused, paid vacation time and reimbursement of healthcare benefits.

69. Accordingly, Bluewater has breached the Agreement.

70. In doing so, Barney has suffered and will continue to suffer harm as a direct result of Bluewater's misconduct in an amount to be determined at a trial in this matter in excess of $50,000.

WHEREFORE, Plaintiff, Shannon N. Barney respectfully requests that this Court enter judgment in its favor and against Defendant, Goldoro Developments, Inc. d/b/a Bluewater Radiology, awarding Plaintiff damages as well as its costs and legal fees incurred in bringing this action, and such other relief that the Court deems just and proper.

**COUNT IV**
*(Breach of Oral Agreement)*

71. Barney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

72. Bluewater and Barney entered into a lawful, binding Oral Agreement governing Barney's employment including, without limitation, the compensation thereof.

73. By and through the Oral Agreement, Barney was entitled to an annual, base salary of $140,000.00 paid on a bi-weekly basis in accordance with Bluewater's standard payroll practices.

74. In addition, Barney was entitled to all unused, paid vacation as well as certain benefits as promised by the Oral Agreement.

75. Barney fully performed her duties as an employee of Bluewater and fulfilled all terms and conditions of the Oral Agreement through her date of termination, March 3, 2023, and Bluewater accepted those services.

76.     Barney is entitled to payment for all services rendered through the date of her termination as well as the agreed upon considerations in exchange for acceptance of employment.

77.     Bluewater has admitted that Barney is entitled to payment for services rendered, as well as unused, paid vacation time.  *See* Exhibit B.

78.     To date, Bluewater has failed to remit payment to Barney for her final two weeks of services rendered, unused, paid vacation time and reimbursement of healthcare benefits.

79.     Accordingly, Bluewater has breached the Oral Agreement.

80.     In doing so, Barney has suffered and will continue to suffer harm as a direct result of Bluewater's misconduct in an amount to be determined at a trial in this matter in excess of $50,000.

WHEREFORE, Plaintiff, Shannon N. Barney respectfully requests that this Court enter judgment in its favor and against Defendant, Goldoro Developments, Inc. d/b/a Bluewater Radiology, awarding Plaintiff damages as well as its costs and legal fees incurred in bringing this action, and such other relief that the Court deems just and proper.

## COUNT V
*(Misrepresentation)*

81.     Barney re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 above.

82.     Adamo misrepresented to Barney that she would be the Director of Operations for Medvue.

83.     Adamo misrepresented that the Agreement would transfer to Barney's position as Director of Operations for Bluewater and that all terms were valid and binding against both Bluewater and Barney.

84.     Adamo knew or should have known that he was not going to abide by the Agreement or Oral Agreement in that he knew benefits would not be offered, vacation time would not be paid out and the last two weeks of salary would be withheld if terminated from employment.

85.     Adamo intended to induce Barney into working as Director of Operations for Bluewater.

86.     Barney acted in reliance on Adamo's representations that Barney would be offered benefits, unused vacation time would be paid out and the last two weeks of salary would be paid as usual if terminated from employment and was injured as a result of Adamo's false representations.

WHEREFORE, Plaintiff, Shannon N. Barney respectfully requests that this Court enter judgment in its favor and against Defendant, CIRO ADAMO, awarding Plaintiff damages as well as its costs and legal fees incurred in bringing this action, and such other relief that the Court deems just and proper.

Dated this 30th day of May, 2023.

**BRENNAN MANNA & DIAMOND**

*/s/ Alicia M. Kupcinskas*
**Alicia M. Kupcinskas**
Florida Bar Number 117610
5210 Belfort Road, Suite 400
Jacksonville, Florida 32202
(904) 366-1500
(904) 366-1501 (facsimile)
Primary Email:  amkupcinskas@bmdpl.com
Secondary Email:  jmdurrance@bmdpl.com

*Counsel for Plaintiff*

# EXHIBIT A

January 11, 2021.

**CONFIDENTIAL**

**Delivered by E-Mail s** ███████ **@gmail.com**

Shannon Barney,
Orlando, Florida.
32803.

Dear Shannon:

**Re: Offer of Employment and Ancillary Agreements.**

We are pleased to deliver this letter confirming our offer of employment to you in the role of **Director of Operations** with Medvue Diagnostic Imaging Inc. (the "**Company**"), located at 5601 Corporate Way (WPB), and 1799 S. Federal Hwy Boca Raton. You will report directly to Dr. C. Adamo Owner, or anyone else he may assign for this purpose, when he may be otherwise unavailable. As the business of the Company develops and evolves, your role and reporting relationship may change from time to time, in which case you will be provided sufficient notice in advance, accordingly.

**Role Definition :**

**Director of Operations**  shall entail the following duties and responsibilities; but these may be amended or changed from time to time, as circumstances dictate and permit :

- working with Dr. Adamo and his consultants to engage architects, engineers and other professionals to design and physically complete the Clinics to meet all regulatory and legal requirements ; and then supervising the design and construction phase described above; arranging for all internal furniture and furnishings required - as well as external  signage ;

- locating the appropriate medical equipment needed for the Clinics to operate ; arranging lease financing where possible ; coordinating the delivery and set up of all such equipment ; arranging for servicing of this equipment on an ongoing basis;

- setting salary levels, and hiring and supervising all staff needed for the Clinics to properly function ; ensuring the clinics are being cleaned and kept presentable as required ; ensuring that all equipment is being maintained and properly functioning;

- finalizing all registrations and accreditations required by law for the Clinics to open; registering the Clinics with all Insurance and Government payors; overseeing all patient bookings and relations ; supervising all billings ;

- daily administration – including the ordering of supplies, stationery and requisition forms; overseeing all marketing and advertising; the preparation of budgets and agendas for staff or management meetings; the compiling of all ledgers and bookkeeping entries; the reconciliation of all payables and receivables; interaction with referring physicians ; monitoring all Service Agreements ; setting strategies for market penetration and meeting the competition ;

 - locate and employ a Medical Director, and make certain that the agreement for this service is being properly complied with at all times ;

- arranging for all IT, computer, internet and RIS/PACS systems and installations at the Clinics – and their ongoing maintenance and reliability.

2

## Term of Employment

Your anticipated start date is **Feb 15, 2021.** The first 3 months of your employment will constitute a probationary period, during which you will be expected to learn and assimilate all of the fundamentals of your new role. However, at any time up to the three-month anniversary date of the commencement of your employment, either the Company or you may terminate your employment effective immediately, without any advance notice. Upon any such termination occurring during this probationary period, you will not be entitled to any compensation, severance or other payment - beyond the regular salary you shall have earned – up to and including your last day of employment .

## Compensation :

If you accept this offer of employment, your compensation will comprise of the following two components: (1) base compensation; (2) performance bonus.

   (1) Your base salary will consist of an annual salary of $140,000.00 paid on a bi-weekly basis in accordance with the Company's regular payroll practices.

   (2) Your performance bonus will be in the amount equal to ten percent (10%) of earnings before taxes of the Company determined in accordance with its past practice and paid no later than the later of ninety (90) days after fiscal year end or thirty (30) days after completion of financial statements.

## Additional Compensation Provision :

At the end of 2 years, and providing the clinics are then profitable, you will be afforded the opportunity to purchase shares in the enterprise – up to maximum level of 15 %.You may arrive at this percentage cumulatively over a number of years, and so long as you remain employed by the Company. However, should the Company open more than 3 clinics in all over this 2 year period, then you would have the opportunity to purchase shares in those additional clinics being opened, but not yet in the original 3, until a full 2 years had elapsed. The 15 % level of ownership shall still apply throughout this share purchase arrangement though.

The nature and standing of these shares in all matters pertaining to matters of corporate governance and administration, would need to be predetermined by the parties prior to their purchase; and the Purchaser should seek independent legal and accounting advice, as to the nature of how any purchase should be structured on her behalf.

The price for these shares as well would need be evaluated and set by a third arm's length party familiar with such practices. However, at no time will Dr. Adamo agree to relinquish his majority ownership or control position in the Company. Only a minority ownership position up to the 15 % level described shall ever be allowed to be sold, until such time as Dr. Adamo shall determine at his sole and unfettered option to do otherwise.

Moreover, should you cease to be an employee of the Company at any time, you shall be required to sell all shares that you may have purchased up to that point in time back to the Company Treasury. The pricing of your shares for this transaction. shall then be set by an independent third party evaluator chosen by the parties mutually for this purpose, and who is familiar with such practice. The sale transaction shall then occur no later than five business days after his evaluation shall have been delivered.

## Vacation :

The Company's current vacation policy allows you to be eligible to earn up to an initial three weeks of paid vacation during your first full year of employment; four weeks during your second year of full employment;

and 5 weeks during your third year of full employment . Nevertheless, this policy can be revisited form time to time, and then revised or amended as agreed upon .

You will also be entitled to the following statutory holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the day following Thanksgiving Day, and Christmas Day. The Company will adhere to all obligatory federal or state holidays, mandated by statute or by historical custom.

### Insurance and Benefits :

Still to be arranged for the company. Once established you will be eligible for group insurance coverage under the mandatory, Company-sponsored benefit program following sixty (60) days of full-time continuous employment. The program includes Basic Term Life Insurance, Accidental Death and Dismemberment ("AD&D"), Health and Dental coverage. The Company will pay 75% of the cost for employee medical benefits, 60% for employee dental benefits and 100% for Life Insurance and Accidental Death & Dismemberment coverage.

### Company Policies :

Please note that all references in this offer letter to the Company's vacation policy, other policies and procedures, medical, dental, disability and life insurance plans, commission plans, other benefit programs, deliverables and performance targets are as they are currently in effect and any of them may be modified at any time in the Company's sole discretion. In the event of any conflict between information contained in this offer letter and in any of the plan, policy or program documents, the plan, policy or program documents will supersede and prevail.

You also agree to abide by the rules, policies and protocols that are presently in force, or that the Company may implement or revise from time to time, including without limitation policies concerning confidential information, disclosure, internet use, harassment and business expenses.

### At-Will Employment :

Your employment is *employment at will* and may be terminated by the Company without notice at any time, for any reason, with or without cause. In any event, separation from the Company shall be governed by the relevant State and Federal Employment Standards Acts in your jurisdiction of employment, if any, as amended from time to time and will be in complete satisfaction of all common law and statutory obligations regarding notice of termination.

You acknowledge and agree that the above noted terms are in complete satisfaction of all contractual, statutory, or common law notice requirements at law or equity. You hereby waive any claim to further notice or compensation and you agree that the foregoing notice period(s) are deemed conclusively to be reasonable notice of termination.

### Full-Time Attention :

During the term of your employment, you shall devote the whole of your time, attention and ability to the performance of your duties and responsibilities and shall use your best efforts to promote the interests of the Company. You shall not accept employment, or engage in self-employment, with any other individual, firm, corporation or agency of government at any time during the term of your employment which the Company deems will interfere or conflict with your duties to the Company. You will be required to disclose any full or part-time employment, self-employment, contractor services, freelancing or any other business activity during your employment with the Company. The Company will consider several factors, including any potential conflict of interest, to determine if you can continue this relationship during your employment with it.

4

## Confidentiality :

Please note that the conditions of this offer letter are specific to you and, therefore, the Company requests that the terms be held in the strictest confidence. Please be advised that all business changes related to your new role and associated reporting relationship changes is confidential in nature and should not be divulged to others until formal communication has been sent out by the Company. Without limiting the generality of this confidentiality requirement, please note that you are specifically required not to utilize all or part of the terms outline din this offer of employment to negotiate with competing offers you may have at the time this letter is presented to you.

## Conditions :

Employment at the Company is conditional upon :
(1) your signing and delivering to the Company, prior to your first day of employment, a signed copy of this offer letter together with a signed copy of the Schedule "A" ;
(2) satisfactory background check and verification of your prior employment, education and references ;
(3) satisfactory driving record and possession of a valid driver's license with the appropriate class, at the time of the offer, and for the duration of your employment ;
(4) ability to legally work in the U.S. at the time of the offer, and for the duration of your employment.

## Representation and Warranty :

It is implied that all information provided to the Company during interviews and through résumés, applications and other submitted documentation constitutes true and factual data. You represent and warrant same to the Company.

If you have any questions about this offer letter, please contact the undersigned immediately so that we can review specific terms together. We strongly recommend that you have your lawyer review these terms and conditions including Schedule "A". Any changes to this offer letter must be in writing and signed by the Company. We both acknowledge that there are no oral agreements between us and that once the Company and you sign this offer letter, it will supersede any prior agreements whether written or oral. Moreover, the terms of this agreement cannot be considered amended or altered in any way, unless such proposed changes have been presented in writing beforehand, and then accepted and countersigned by both parties.

If you agree with all of the foregoing terms, please sign below where indicated, and return an executed copy of this offer to us by 5:00 P.M. on Jan 15ᵗʰ, 2021; failing which - you will be deemed to have declined our offer, and it shall lapse and become fully null and void .

We look forward to having you join our team.

Yours very truly,

**Medvue Diagnostic Imaging Inc.**

Per :_____

Dr. Ciro Adamo.
President.



5

I, Shannon Barney, having been afforded an opportunity to obtain independent legal advice, and having reviewed this offer of employment and fully understanding its terms and conditions, do hereby acknowledge and accept the same offer of employment on this 11 day of Jan. , 2020.

**WITNESS:**

Shannon Barney.

Erick Mosquera

Witness Name:

Date : 01|11|2021

## SCHEDULE "A"

**This Schedule forma an integral part of the preceding Offer of Employment to Shannon Barney, and must be executed simultaneously with that Offer. In order for that Offer to become valid and enforceable .**

#### Non-Disclosure, Non-Solicitation and Non-Competition

This Agreement is made as of this 3rd day of January, 2020, by Shannon Barney (**"Employee"**) and Medvue Diagnostic Imaging (together with its present and future subsidiaries and affiliates the **"Company"**), with a place of business at 1799 S . Federal Hwy, Boca Raton, Florida. In consideration of employment by the Company of the Employee and the compensation to be paid by the Company to the Employee now and hereafter, Company and Employee agree as follows:

1.   **Confidential Information:**

   a)   **Confidential Information is a Valuable Company Asset.** The Company's Confidential Information (defined below) is a valuable, special and unique asset of the Company's business, access to and knowledge of the Company's legitimate business interests that the confidentiality of all Confidential Information be preserved. Use or reliance on the Confidential Information by or on behalf of any other business or commercial activity in competition with the Company could result in irreparable harm to the Company.

   b)   **Non-Disclosure Obligation.** Employee agrees to hold in strict confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Company's directors, any Confidential Information of the Company, and such agreement with respect to Confidential Information shall remain in effect at all times during the term of his or her employment and at any time thereafter.

   c)   **"Confidential Information" Defined.** Employee understands that "Confidential Information" means any and all information and knowledge regarding the Business of the Company which the Employee assimilates or to which the Employee has access during his or her employment with the Company including, but not limited to, information about the Company proprietary methods, methodologies and disciplines, technical data, trade secrets, know-how, research and development information, product plans, products, client information, employees, employee lists, books and records of the Company, corporate relationships, suppliers, markets, computer software, computer software development, inventions, processes, formulas, technology, designs, drawings, technical information, source codes, business plans, and matters of a business nature such as information regarding marketing, recruiting, costs, pricing, finances, financial models and projections, billings or other similar business information. Employee further understands that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no act of Employee. Employee further agrees that all Confidential Information shall at all times remain the property of the Company.

   d)   **Former Employer Information.** Employee represents and warrants that the execution of this Agreement and performance of the Employee's obligations hereunder will not conflict with, result in the breach of any provision of, or the termination of or constitute a default

7

shan

under any agreement with any other person or entity of which the Employee is a party or by which the Employee is bound. Furthermore, Employee agrees that he or she will not, during his or her employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former employer or other person or entity with which Employee has an agreement or duty to keep in confidence and that Employee will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

e) **Third Party Information.** Employee recognizes that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. Employee agrees to hold all such confidential information in the strictest of confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out his or her work for the Company.

f) **Company Property.** Employee agrees that all documents, materials, software, or other media, or information of any kind concerning any matters affecting or relating, directly or indirectly, to the Company's business, products or services, (collectively, "Media"), whether or not they contain or embody Confidential Information, and all Confidential Information are the exclusive property of the Company. Employee agrees to exercise care in accessing, storing and disposing of Media, particularly when it includes Confidential Information. Immediately upon any termination of Employee's employment or at any time upon the request of the Company, Employee agrees to deliver to the Company all Media then in his or her possession or control. If the Media cannot be reasonably delivered, the Employee agrees to provide reasonable evidence that the Media have been destroyed, including but not limited to, purging or erasing any computer files or date records, provided, however that the Employee will not destroy or discard any Media without prior authorization from the Company.

2. **Non-Solicitation of Employees.** Employee recognizes and agrees that the Company employees must by the nature of their jobs have access to Confidential Information, that the Company invests in its employees by making specialized training available to them and that as a professional services company. The Company has a legitimate interest in protecting its employee relationship and in maintaining a stable workforce. During the Employee's employment with the Company and for a period of two (2) years following the termination of his or her employment with the Company for any reason, Employee agrees to refrain from and will not, directly or indirectly, as an independent contractor, consultant, agent, partner, joint venture or otherwise solicit or attempt to assist another person in the solicitation of employees of the Company, either for Employee's own business or for any other person or entity.

3. **Non-Solicitation of Clients.** Employee agrees that the Company has a legitimate interest in protecting its client relationships. During the Employee's employment with the Company and for a period of one (1) year following the termination of his or her employment with the Company for any reason, Employee agrees to refrain from and will not directly or indirectly solicit, divert or take away any clients or business opportunity from the Company or patronage any of the Company's clients. For the purposes of this provision, the Company clients include natural or legal persons that were contacted, solicited, supervised or served by the Employee during her or her employment, or with which Employee had contact during his or her employment.

8

4.  **General Provisions.**

   a) **Governing Law.** This Agreement will he governed by the laws of the state of Florida.

   b) **Entire Agreement. Approvals or Consents and Modifications.** The Agreement sets forth the entire agreement and understanding between the Company and Employee relating to the subject herein and merges and supersedes all prior discussions and agreements with respect hereto. Any subsequent change or changes in Employee's duties, role, salary or compensation will not affect the validity or scope of this Agreement. In any instance under this Agreement in which the authorization, consent or approval by the Company is required or can be given, such authorization, consent or approval (i) may be given, withheld or conditioned in the Company's sole discretion, and (ii) to be effective must be in writing and signed by a Chief Executive Officer, Chief Financial Officer, Executive Vice President, Senior Vice President, Vice President or Director unless specifically provided otherwise in this Agreement. No modifications of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by both parties.

   c) **Severability.** If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

   d) **Successors and Assigns.** This agreement will be binding upon Employee's heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors and assigns.

   e) **Enforcement in Accordance with Law.** The parties that this Agreement will be enforced in accordance with applicable law.

   f) **Waiver of Breach.** The waiver by the Company of a breach of the provisions of this Agreement by the Employee shall not be construed as a waiver by the Company of any subsequent breach by the Employee.

   g) **Equitable Relief.** The Employee acknowledges and agrees that a breach of any provision of this Agreement will cause irreparable damage to the Company, and that upon such breach, the Company shall be entitled to equitable relief, including injunctive relief and specific performance, without the necessity of proving actual damages, and shall be further entitled to an accounting of all earnings, profit or other benefits acquired by the Employee as a result of such breach, and to any other remedy now or hereafter provided at law for such breach.

   h) **Independent Legal Advice.** The Employee confirms that he or she has been afforded an opportunity to obtain independent legal advice regarding the terms of this Agreement. Further, it is confirmed by Employee that he or she has entered this Agreement freely, voluntarily and without duress.

**SIGNATURE PAGE FOLLOWS DIRECTLY BELOW .**

9

SIGNED a͟t͟ ͟O͟r͟l͟a͟n͟d͟o͟ , Florida, this ͟1͟1͟ day of January, 2021.

WITNESS:

Shannon Barney .

Witness Name: Erick Mosquera

Date : 01/11/2021

# EXHIBIT B



**From:** Jack Lechcier-Kimel <s███████████@gmail.com>
**Date:** Friday, March 3, 2023 at 1:34 PM
**To:** Shannon Barney <s████████@bluewaterradiology.com>
**Subject:** Re: Moving forward

Hello Shannon :


I have discussed your email with Dr. Adamo. He is not agreeable to the bulk of your terms. While he agrees that you should be paid for days worked and accumulated vacation, he does not believe that you are entitled to any severance beyond a two weeks notice period. Moreover, he takes the view that you did resign voluntarily; and that your rehiring was not of a permanent nature in any case. Furthermore, neither under Florida Law, nor pursuant to your Employment Contract, is any severance legally required.


He will not require you to assist with the takeover or transitioning of the Kagan Clinic. However, he will require that you return your computer and telephone; and all file material in your possession ; and he will require you to supply full details and a list of all matters that you are currently working on, so they can be taken over and assumed by others. He will also consider providing the letter requested, once everything else has been fully agreed upon.

Please take the weekend to reconsider your position, and let's speak on Monday or Tuesday about a way to resolve the issues noted.

Best wishes,

Jacques.

# EXHIBIT C



**From:** Jack Lechcier-Kimel <████████████@gmail.com>
**Sent:** Friday, March 3, 2023 3:17:30 PM
**To:** Shannon Barney <████████@bluewaterradiology.com>

**Subject:** Notice of Termination

Caution! This message was sent from outside your organization.

Shannon :


On behalf of both Dr. Adamo and Bluewater Radiology, I have been asked to serve you with this formal Notice of Termination of your services effective immediately.

Thank you.


Jacques Lechcier-Kimel.

On behalf of Dr. Adamo and Bluewater Radiology.



# EXHIBIT D



**From:** Shannon Barney <s​█████████​@gmail.com>
**Sent:** Thursday, March 9, 2023 11:11 AM
**To:** Jack Lechcier-Kimel <su​█████████​@gmail.com>; Dr. Adamo <d​████████​@gmail.com>
**Cc:** Monica B. Andress <m​███████​@bmdllc.com>; Jeana Singleton <j​████████​@bmdllc.com>
**Subject:** Delinquent Pay

**\*\*External User\*\***

Good morning Dr. Adamo and Mr. Kimel
Normal payroll processing was due on March 8, 2023, for the pay period ending March 4, 2023.  To date I have not received payment for work completed up to Friday March 3, 2023, as well as final payout of PTO of five weeks as per outline in my employment contract at 3 years of employment which commenced on February 15, 2023.
Please advise the status of my final paycheck.  As per the email received by Mr. Kimel on March 3, 2023 there would be no issues with my final payment.
Sincerely, Shannon N. Barney
--
Shannon Nicole Barney MBA/HCM
Phone ██████-3120
s██████████@gmail.com

# EXHIBIT E



LISTEN. SOLVE. EMPOWER.
**P:** 330.253.5060 **F:** 330.253.1977 **W:** bmdllc.com
75 East Market Street, Akron, Ohio 44308

**Jeana M. Singleton**
Member
**D**: (330) 253-2001
**F**: (330) 253-2012
**E**: jmsingleton@bmdllc.com
*Licensed in Ohio and Michigan*

March 27, 2023

**VIA Electronic Mail**
Medvue Diagnostic Imaging, Inc.
5601 Corporate Way, Suite 307
West Palm Beach, Florida 33407
Email: s███████@gmail.com; c██████@gmail.com

      **RE:**    **Termination of Shannon N. Barney and Post-Employment Demand for Damages**

To Whom It May Concern:

Please be advised that the undersigned and the law firm of Brennan, Manna & Diamond, LLC have been retained to represent Shannon N. Barney MBA, HCM, ARRT(N), CNMT ("Ms. Barney") regarding her recent termination from Medvue Diagnostic Imaging, Inc. ("Medvue") and/or Goldoro Developments, Inc. ("Goldoro") (collectively, the "Provider") and this post-employment demand for damages in accordance with federal and Florida law as well as the Offer of Employment and Ancillary Agreements (collectively, the "Agreement").

In brief background, on January 11, 2021 (the "Effective Date"), Ms. Barney entered into the Agreement with Medvue to serve as its full-time Director of Operations in accordance with the terms and conditions outlined therein. In exchange for such services, Medvue was legally and contractually obligated to timely remit compensation to Ms. Barney as well as honor the additional benefits afforded to Ms. Barney by virtue of the Agreement including, without limitation, her eligibility for paid vacation based on years of service.

As you are aware, on March 3, 2023 (the "Termination Date"), Mr. Barney was terminated without cause and without notice by the Provider. Subsequently, Ms. Barney contacted the Provider to ensure that she would be compensated for all services rendered as of the Termination Date in accordance with applicable, binding law as well as the Agreement. Such payment was, in accordance with the Provider's standard payroll practices, anticipated to be paid on March 8, 2023; however, to date, has not been remitted to Ms. Barney. Moreover, efforts by Ms. Barney to contact Provider to resolve the foregoing have been to no avail as Provider has seemingly declined to respond.

Please be advised that Provider's failure to remit payment to Ms. Barney not only constitutes a breach of the Agreement by and between the parties but, further, gives rise to a cause of action under federal

Page 2 of 2

and/or Florida law for failure to pay mandated wages and/or transmit a final paycheck.[1] Moreover, inaction by the Provider to date gives rise to the permissible and proper filing of a formal complaint with the Federal and/or Florida Department of Labor. Accordingly, ***please allow this correspondence to serve as Ms. Barney's formal demand that Provider promptly remit payment***, in full, for Ms. Barney's final: (1) paycheck for services rendered between February 19, 2023, through March 4, 2023, in the net amount of Three Thousand Nine Hundred and Eighty-Seven Dollars and 07/100 ($3,987.07); and (2) all accrued, unused vacation as provided under the Agreement in a sum amount equal to five (5) weeks of Ms. Barney's contracted compensation amount. ***Ms. Barney demands the foregoing be paid, in full, on or before March 31, 2023.***

Please be advised that, to the extent that the Provider fails, refuses, or otherwise continues to ignore its obligation to pay Ms. Barney the wages that are due by law and under contract, Ms. Barney will move forward with pursing all legal and equitable options in furtherance of resolution including, without limitation, initiating litigation against the Provider and reporting the Provider to federal and state authorities for its non-compliance with binding law(s).

Finally, as the Provider is aware, Ms. Barney has made numerous efforts to coordinate with the Provider to date to return Provider's equipment, patient data, and other confidential information; however, again, such efforts have gone disregarded entirely by the Provider. As such, allow this correspondence to further serve as Ms. Barney's formal request for cooperation by Provider as to the return of its property in accordance with all federal and Florida rules and regulations as well as the Agreement. In furtherance of this request, Ms. Barney seeks to coordinate with the Provider and a mutually agreed upon third-party information technology (IT) support firm to ensure that both Ms. Barney and the Provider's information and interests are protected in this data and property transfer.

We appreciate your prompt attention to, and compliance with, this correspondence, and look forward to discussing further in the near future.

Sincerely,

*Jeana M. Singleton*

Jeana M. Singleton

---

[1] *See* F.S. 448.109 (Through a claim under Florida Statutes § 448.109, a worker who was improperly denied a final paycheck can seek full back pay, other damages, and recoupment of reasonable attorneys' fees).